IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| WINFRED CAUSEY, | ) | C/A No. 4:06-1768-TLW-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| STATE OF SOUTH CAROLINA; | ) | |
| WILLIAM WHITE, WARDEN OF | ) | |
| BROAD RIVER CORRECTIONAL | ) | |
| INSTITUTION; AND HENRY | ) | |
| McMASTER, ATTORNEY GENERAL | ) | |
| OF SOUTH CAROLINA, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Winfred Causey ("petitioner/Causey"), is an inmate in the custody of the South

Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on June 13, 2006.  Respondents filed a motion

for summary judgment on August 2, 2006, along with supporting memorandum.  The undersigned

issued an order filed August 22, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975), advising petitioner of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. Petitioner filed a response on September 11, 2006.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

# I.  PROCEDURAL HISTORY

There has been no significant opposition filed as to the procedural history as set out by the respondents. Therefore, the undisputed procedural history as set out in respondents' memorandum will be discussed below.

Petitioner is presently confined to the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Horry County. At the May 1999, term of Court of General Sessions, the Horry County Grand Jury indicted petitioner for possession with intent to distribute cocaine (99-GS-26-2044), and three counts of trafficking crack cocaine 10 or more grams but less than 28 grams. (99-GS-26-2045, 2046 & 2047). At the January 27, 2000, term of Court of General Sessions, the Horry County Grand Jury indicted petitioner for one count of trafficking more than 28 but less than 100 grams of cocaine (99-GS-26-2778) (App. Pp. 372-373).

Petitioner was represented at the trial level by Stuart Axelrod, Assistant Public Defender. On August 8-9, 2000, petitioner appeared before the Honorable Sidney T. Floyd and a jury on the charge of trafficking more than 28 grams but less than 100 grams of cocaine (99-GS-26-2778). Petitioner was found guilty as charged and sentenced by Judge Floyd to twenty-five (25) years imprisonment and fined $50,0000. (App. p. 243).

Petitioner filed a timely Notice of Intent to Appeal and an appeal was perfected on his behalf by the South Carolina Office of Appellate Defense. On October 16, 2001, Daniel T. Stacey, Chief Attorney, filed a final brief with the following issues for review:

1.    Whether the court erred when it overruled appellant's motion of a directed verdict, where the evidence the state introduced showed entrapment as a matter of law?

2

2.      Whether the court erred when it refused appellant's motion to suppress a videotape, where there were significant gaps in the recording?

On October 15, 2001, a final Brief of Respondent was filed on behalf of the State. On June 26, 2002, the South Carolina Court of Appeals affirmed petitioner's conviction. State v. Causey, Unpub. Op. No. 02-UP-483 (S.C. Sup. Ct. Filed June 26, 2002).

Petitioner next filed a pro se Application for Post-conviction Relief (APCR) on August 12, 2002 ()2-CP-26-4568), and an amended application dated April 22, 2004. (App. Pp. 281-316). The State filed a Return on February 4, 2004. In his APCR, petitioner raised the following allegations:

1.      Ineffective assistance of counsel; and

The State filed a Return dated May 23, 2003. (App. pp. 47-49).

An evidentiary hearing in Petitioner's APCR was held before the Honorable B. Hicks Harwell on April 29, 2004, in which petitioner presented various ineffective assistance of counsel claims. (App. Pp. 324-364). Petitioner was present and represented by appointed counsel, Paul Archer. Petitioner testified in his own behalf. The State called trial counsel Axelrod. On June 22, 2004, Judge Harwell issued a written Order of Dismissal in which he rejected petitioner's claims for relief. (App. pp. 366-370).

A timely notice of appeal was filed with the state supreme court from the Order of Dismissal in the PCR action. Aileen P. Clare, of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in his PCR appeal. On February 11, 2005, Clare filed a Petition of Writ of Certiorari in which she raised the following issue on behalf of petitioner:

Was trial counsel ineffective for failing to request a continuance in order to have a videotape analyzed, when counsel was convinced that the police had manipulated the tape?

3

The State's Return to the Petition for Writ of Certiorari was filed on May 5, 2005. The South Carolina Supreme Court issued an Order dated April 19, 2006, in which it denied the Petition for Writ of Certiorari. The Remittitur was sent down on May 5, 2006.

## II. PETITIONER'S GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, filed June 13, 2006, petitioner raised the following challenges to his conviction, quoted verbatim:

Ground One:          Due Process Violation

Ground Two:          Subject Matter Jurisdiction

Ground Three:        Chain of Custody Violation

Ground Four:         Jury selection violations, [E]ntrapment

(Petition).

Petitioner also attached eight (8) pages to his petition.

## III.  SUMMARY JUDGMENT

On August 2, 2006, the respondents filed a return and memorandum of law in support of their motion for summary judgment.  As stated, petitioner filed a response in opposition on September 11, 2006.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts

4

which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. <u>See</u> Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the <u>Celotex</u> case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

Since Causey filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d),

5

as amended.  <u>Lindh v. Murphy</u>, 117 S. Ct. 2059 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.

1998); <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In a thorough discussion of the application of this statute in <u>Green</u>, the Fourth Circuit stated:

> If a state court decision is in square conflict with a precedent (supreme court) which is controlling as to law and fact, then the writ of habeas corpus should issue; if no such controlling decision exists, the writ should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts. In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.

<u>See also</u> <u>Fitzgerald v. Greene</u>, 150 F.3d 357, 362 (4th Cir. 1998); <u>Wright v. Angelone</u>, 151 F.3d 151,

156 (4th Cir. 1998); <u>Cardwell v. Greene</u>, 152 F.3d 331, 339 (4th Cir. 1998).  In <u>Williams v. Taylor</u>,

163 F.3d 860 (4th Cir. 1998), the court specifically rejected an argument that the standard of review

enunciated in <u>Green</u>, 143 F.3d 865, was erroneous.  Thus, to a large extent, the amendment of § 2254

shifts the focus of habeas review to the state court application of Supreme Court law.  <u>See</u> <u>O'Brien</u>

<u>v. DuBois</u>, 145 F.3d 16 (lst Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that

a state court's decision plays in a habeas proceeding by specifically directing the habeas court to

make the state court decision the cynosure of federal review").  Further, the facts determined by the

state court to which this standard is applied are presumed to be correct unless rebutted by the

petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). <u>Wilson v. Moore</u>, 999 F. Supp.

783 (D.S.C. 1998).

## V.  FACTS

In their memorandum, respondents set forth the facts as noted by the South Carolina Court

of Appeals. This set of facts will be set out in this report and recommendation for background history

as follows:

> Justin Britt agreed to act as a confidential informant for the Horry
> County Sheriff's Department after he was arrested for trafficking in
> cocaine. On February 4, 1998, Britt met with law enforcement
> officers to arrange a controlled drug buy from Causey. The officers
> supplied Britt with an audio/video recording device. The camera was
> strapped to Britt's back, and a separate audio recording device was
> placed in Britt's back pocket.
>
> Britt called Causey, and SLED Agent Maxwell Dorsey drove Britt to
> Causey's home in an undercover police truck, arriving at 9:00 p.m.
> According to testimony at trial, after Britt entered Causey's residence,
> Causey refused to speak with him. Causey asked Britt to write what
> he wanted. Britt wrote that he wanted an ounce and a half, meaning
> forty-two grams of cocaine. Causey wrote a question in response,
> asking if he wanted "hard or soft," which meant crack cocaine or
> powder cocaine. Britt indicated he wanted crack cocaine, counted out
> $1850.00 in front of Causey, and gave the case to him. Causey
> instructed Britt to return in forty-five minutes because someone had
> to deliver the drugs. Britt and Agent Dorsey drove away from
> Cuasey's residence.
>
> Britt returned to Causey's residence around 9:50 p.m., but Causey
> informed him that he was still waiting on the delivery of the drugs.
> Causey instructed Britt to drive down to the fork in the dirt road for
> ten minutes and then return. Ten minutes later, as Britt and Agent
> Dorsey were driving slowly down the dirt road, Causey approached
> the truck. Agent Dorsey stopped the truck, and Britt got out to meet

7

with Causey. At 10:06 p.m., Causey gave Britt a package containing thirty-eight grams of powder cocaine instead of the requested forty-two grams of crack cocaine. He sat on the bumper of the truck, and Britt and Agent Dorsey drove Causey back to his home. Causey was later arrested.

The entire drug transaction, including some of the conversations between Britt and Agent Dorsey while they were waiting, was video and audio taped. The video and audio tapes were played in an edited form at the trial. However, there were gaps in the tape during times when the video camera was turned off. Causey moved to suppress the videotape on the basis of the gaps, which the trial court refused.

## VI.  ARGUMENTS/FINDINGS

In ground one, petitioner alleges his due process was violated due to the trial court erring by refusing trial counsel's request to suppress a videotape shown at trial. Petitioner also states his appointed counsel was ineffective in these regards.

In their memorandum in support of summary judgment, respondents argue that admissibility of evidence is a matter of state law and only a contention that the improper admission of the evidence rendered the trial fundamentally unfair or violated a specific constitutional right will be considered in a federal collateral proceeding.

A review of the direct appeal reveals petitioner raised this issue as issue number 2. The South Carolina Court of Appeals held the following:

Causey next argues the trial court erred in allowing the videotape of the drug transaction into evidence because significant gaps of time were missing from the recording. We disagree.

The trial court has broad discretion concerning the admission or exclusion of evidence. State v. McDonald, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000). The trial judge's determination regarding the admissibility of evidence will not be disturbed on appeal absent an

abuse of that discretion. Id. We find no abuse of discretion in the trial court's denial of Causey's motion to suppress.

Before the trial began, Causey moved to suppress the videotape. The trial court held a suppression hearing. Agent Dorsey explained that the gaps in taping resulted from efforts to conserve the battery during periods when there was no interaction with Causey. There are no allegations that the portion of the videotape involving the transactions with Causey was inaccurate or falsified. Although there are gaps in the videotape during the time period when Britt and Agent Dorsey were waiting on Causey, the evidence supports the trial court's finding that the gaps occurred during the "downtime" and were not calculated to prevent the recording of exculpatory evidence.

Causey also complains about slight discrepancies between several copies of the tape. Three separate copies of the tape were made for Causey: two full copies of the videotape and one redacted version. The second copy of the full tape contained six seconds of tape around 9:53 p.m. that the first tape did not. After a lapse in recording, the second tape resumed at 10:05:47 p.m., whereas the first tape resumed at 10:05:53 p.m.

The SLED technical advisor who copied the tapes admitted discrepancies existed between the two full copies of the tapes, but he explained that at times there was a delay of several seconds before the machine began to record after pressing the record button and that the gap in the middle of the tape could be a result of equipment failure.

Causey argues he was harmed by the admission of the videotape because potentially exculpatory evidence may not have been recorded. He cites State v. Jackson, 302 S.C. 313, 396 S.E.2d 101 (1990) in support of his argument that the videotape should have been suppressed. In Jackson, the assistant solicitor dismissed the DUI charges against the defendant after viewing the videotape of his arrest. A different assistant solicitor then indicated his intent to prosecute the DUI charges against the defendant. The videotape of the arrest was erased before trial due to the earlier notification that the charges had been dismissed. Our Supreme Court held the defendant's subsequent prosecution violated his due process rights because the tape was material to his defense and was apparently exculpatory based on the first solicitor's reaction to it. 302 S.C. at 316, 396 S.E.2d at 102.

9

> Jackson is clearly distinguishable from this case. Jackson concerned the destruction of exculpatory evidence. Here, there is no destruction of evidence, and there is no showing of prejudice. Nor is there any evidence of bad faith on the part of the prosecution resulting from a failure to preserve potentially useful information. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

(App. 276, 280).

A review of the trial transcript reveals counsel made a motion to suppress the video tape and a hearing was held before the trial judge with questioning of witnesses. The PCR Judge found that "roughly eighty pages of the trial record involves trial counsel's litigation of the motion to suppress the videotape of the sting operation." (PCR App. 369). The trial court denied the motion to suppress. The issue was of whether the trial court erred in allowing the videotape into evidence was raised on direct appeal. As set out above, the tape was found to be fully admissible by the South Carolina Court of Appeals on direct appeal. When a federal habeas petitioner challenges findings of fact made by a state court, a federal court cannot issue a writ unless the State's adjudication on the merits "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(2). "[A] determination of the factual issues made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. §2254 (e)(1). Here, petitioner cannot meet his burden of proof under § 2254(d)(1) and Williams v. Taylor. Petitioner has not shown or introduced any evidence on direct appeal or at PCR of bad faith on the part of the officers or any evidence as to what the "missing" portions of the videotape would show. Therefore, the undersigned recommends that this issue be dismissed and respondents' motion for summary judgment granted on this issue.

If petitioner is attempting to assert this issue under the context of ineffective assistance of counsel, the issue was raised at PCR and in the Petition for Writ of Certiorari from the denial of the PCR. Respondents argue they are entitled to summary judgment on this issue because it was reviewed by the PCR court and denied by the state supreme court in the petition for certiorari.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland , supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the

11

> particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide range</u> of professionally competent assistance.  (Emphasis added.)

In <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective."  Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable."  Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error."  <u>See</u> <u>Williams v. Taylor</u>, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting <u>Lockhart</u>, at 369-70).

A review of the order of dismissal by the PCR court reveals the PCR Judge found that, quoted verbatim:

> . . .The Applicant testified that he was never shown the video of the drug sting, but he understood that the tape had apparently been modified. The trial court allowed the tape into evidence and the Applicant claimed his trial counsel failed to properly object and preserve the issue.
>
> . . .Stuart Axelrod, the Applicant's trial counsel, testified that he believed there was bad faith by the police and SLED in the matter of the video. He made the motion to suppress it and conducted a hearing on it before the trial.. . . He did not recall how many times he met with the Applicant, nor could he recall making any motion for continuance. Axelrod stated that he could have used more time to prepare the case, but he said he could always say that about a case. . .
>
> This Court does not find the testimony of the Applicant to be credible on the issues in this case. Trial counsel did fully prepare for the trial of this case, as is shown by the record. Roughly eighty pages of the trial record involve trial counsel's litigation of the motion to suppress the videotape of the sting operation. Trial counsel thoroughly cross-examined the State's witnesses, including the SLED agent who supposedly made the copies of the tape distributed the [sic] Applicant's trial counsel. This Court finds that trial counsel did a very good job of litigating the issue

surrounding the videotape. The issue was preserved and ruled upon by the Court of Appeals, which found the tape fully admissible.

Given the above findings, the Applicant has failed to carry his burden of proof. Trial counsel's performance did not fall below reasonable professional standards. In fact, trial counsel's performance in this case was well above them. Furthermore, the Applicant suffered no prejudice. There is no reasonable probability that the result of the proceeding would have been different but for the alleged errors.

(PCR transcript p. 368-370).

The undersigned concludes that the record supports the state PCR court's holding and it is not contrary to clearly established federal law and an unreasonable determination of the facts in light of the evidence in the state court proceedings. Trial counsel made a motion to suppress the videotape before the trial and testimony was taken. The issue of whether the trial court erred in denying the motion to suppress and allowing the video tape into evidence was raised on direct appeal and at PCR. The South Carolina Court of Appeals found the tape was admissible. Even assuming, *arguendo,* that petitioner's counsel was found to be ineffective with respect to these issues, petitioner has not shown prejudice Therefore, it is recommended that these issues be dismissed and respondents' motion for summary judgment granted.

## GROUND TWO

In ground two of petitioner's habeas petition, he alleges trial court lacked subject matter jurisdiction because he was indicted for trafficking in crack cocaine, yet convicted for trafficking in powder cocaine. In his petition, petitioner specifically argues the following, quoted verbatim, in part:

Without a proper indictment, the court lacks subject matter jurisdiction to enter conviction or impose sentence for a crime. . . an indictment is proper if it is sufficient in charging the elements of the

13

offense and is returned true billed by the grand jury or presentment is
waived. . .

What is alleged in this indictment that we have before this court
differs from what was proved at the trial. This court must direct a
verdict, where there is a material variance, the material in the
indictment was crack cocaine, what was proved in this court was
powder cocaine.

(Petition).

Respondents argue summary judgment should be granted as this issue is procedurally barred.

The undersigned recommends that this issue be dismissed. As this issue pertains to the state

court's jurisdiction, this issue should be dismissed because claims arising from state law are not

cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Jurisdiction is a non-cognizable state

law issue. See Wright v. Angelone, 151 F.3d 151, 156-158 (4th Cir.1998). Therefore, the undersigned

recommends that this issue, ground two, be dismissed.


## GROUND THREE

In ground three of the habeas petition, petitioner asserts a chain of custody violation.

However, petitioner never discusses the violation or asserts what was not kept in the chain of

custody. Petitioner simply sets forth law as to chain of custody. In his response in opposition to the

motion for summary judgment, petitioner still does not address this argument as it specifically

pertains to this case. Respondents stated in their motion for summary judgment that they assume it

relates to the handling of a copy of the videotape. Respondents assert the issue is procedurally barred

in that it was not presented on direct appeal and neither presented as an ineffective assistance of

counsel claim nor ruled upon by the PCR court.

14

A review of the record reveals that respondents and petitioner are correct that petitioner did not raise this issue to the State Supreme Court in his petition for Writ of Certiorari after denial of his PCR application.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398. If, however, "a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits . . . , our review of questions of law and mixed questions of law and fact is de novo." Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999).

The failure to raise a claim in the first state post-conviction petition as required by state law provides an adequate state procedural ground for denying federal habeas corpus relief. See Murch v. Mottram, 409 U.S. 41, 46 (1972); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990), cert. denied, 499 U.S. 982 (1991); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1998). Similarly, if a petition before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for

15

relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. <u>Coleman v. Thompson</u>, 501 U.S. at 750 (1991). The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. <u>Id.</u> at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. <u>Murray v. Carrier</u>, 477 U.S. at 490-92.

Thus, a prisoner must demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's ineffectiveness in failing properly to preserve a claim for state court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim. <u>Id.</u> at 489-97. The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim, before it can be used to establish cause for a procedural default. <u>Id.</u> at 489. The doctrine's purposes would be frustrated if federal review were available to a prisoner who had presented his claim in state court, but in such a manner that the state court could not, under its procedural rules, have entertained it. <u>Id.</u>

In <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997), the Fourth Circuit Court of Appeals set forth the exhaustion requirements under Section 2254:

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a §2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts . . .

16

> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced . . .

Id. at 910-911 (citations omitted).

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 to 17-27-160. "Exhaustion includes the filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." Gibson v. State, 495 S.E.2d 426, 428 (S.C. 1998).

This issue of a chain of custody violation was not raised on direct appeal or in the writ of certiorari from the PCR appeal. The petitioner has not alleged any cause and prejudice to overcome the default. Thus, it has not been exhausted in state proceedings. Without cause, the undersigned does not look at prejudice. The petitioner also has not alleged or shown "actual innocence" to overcome the default. The undersigned finds that petitioner has failed to make the requisite showing to overcome this default,  Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, supra.  Therefore, the undersigned recommends that ground three in the habeas petition be dismissed as procedurally barred and respondents' motion for summary judgment granted on this issue.

17

## GROUND FOUR

In ground four, petitioner argues improper jury selection and entrapment. Petitioner contends that either his attorney or the court failed to ensure that the jury pool was queried on their bias and prejudice. Further, petitioner argues his conviction for trafficking was the product of entrapment.

Respondents argue that the issue of jury selection is procedurally barred whether as a freestanding claim or one of ineffective assistance of counsel. Respondents assert there was no objection at trial, no issue raised on direct appeal, and no issue raised during the PCR at either the trial or appellate level. As to petitioner's argument of entrapment, respondents assert that on direct appeal petitioner argued the trial court erred when it overruled appellant's motion for a directed verdict, where the evidence the state introduced showed entrapment as a matter of law. The state court found that trial counsel did not argue entrapment in support of his directed verdict motion, thus, the issue was not preserved for appeal.  Petitioner did not raise a claim of ineffective assistance of counsel for failing to argue the entrapment issue in the directed verdict motion, thus preserving it for appeal at the PCR hearing and it was not ruled upon by the PCR court.

In his response, petitioner asserts his counsel was ineffective for failing to make a motion to suppress evidence based on entrapment.

The issue of jury selection violation was not raised on direct appeal or in the writ of certiorari from the PCR appeal. The petitioner has not alleged any cause and prejudice to overcome the default. Thus, it has not been exhausted in state proceedings. Without cause, the undersigned does not look at prejudice. The petitioner also has not alleged or shown "actual innocence" to overcome the default. The undersigned finds that petitioner has failed to make the requisite showing to overcome this default,  Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice"

18

has occurred. <u>Murray v. Carrier</u>, <u>supra</u>.  Therefore, the undersigned recommends that Ground four in the habeas petition pertaining to jury selection be dismissed as procedurally  barred and respondents' motion for summary judgment granted on this issue.

As to petitioner's claim regarding entrapment, the undersigned finds the issue is procedurally barred. A review of the opinion of the South Carolina Court of Appeals reveals the following:

> Causey first argues the trial court erred in denying his motion for a directed verdict because the evidence showed entrapment as a matter of law. This issue is not preserved for appeal.
>
> At the close of the State's case, Causey moved for a directed verdict based on deficiencies indictment and insufficient evidence. The trial court denied the motion. Causey argued the defense of entrapment to the jury, and the trial judge charged the jury regarding entrapment. However, Causey did not argue entrapment in support of his motion for directed verdict, nor did the trial judge rule upon that ground. For the first time, Causey argues on appeal the trial court should have granted a directed verdict because the evidence demonstrated entrapment as a matter of law. A party may not argue one ground for directed verdict at trial and another on appeal. <u>See</u> <u>State v. Byram</u>, 326 S.C.  107, 113, 485 S.E.2d 360, 363 (1997); <u>State v. Russell</u>, 345 S.C. 128, 132, 546 S.E. 2d 202, 204 (Ct. App. 2001) (stating that issues not raised to the trial court in support of the directed verdict motion are not preserved for appellate review). Because this argument was not raised to the trial court, it is not preserved for appellate review.

(App. 275-276).

Thus, the issue was not preserved for direct appeal. Petitioner did not raise this issue in his ineffective assistance of counsel argument at PCR and/or the PCR court did not address this issue in the Order of Dismissal. Therefore, this issue is procedurally defaulted. The petitioner has not alleged any cause and prejudice to overcome the default. Thus, it has not been exhausted in state proceedings. Without cause, the undersigned does not look at prejudice. The petitioner also has not

alleged or shown "actual innocence" to overcome the default. The undersigned finds that petitioner has failed to make the requisite showing to overcome this default, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, supra. Therefore, the undersigned recommends that Ground four in the habeas petition pertaining to the issue of entrapment be dismissed as procedurally barred and respondents' motion for summary judgment granted on this issue.

Petitioner also alleges a conflict of interest issue in his petition. Petitioner asserts the conflict of interest arose in this case "from his counsel Thomas Floyd, the son of judge Sidney Floyd." Respondents assert that this issue is procedurally barred in that it was not presented to the state's highest court.

This issue as to conflict of interest is procedurally barred from habeas review in that it was not raised and/or ruled upon at PCR or direct appeal. Further, assuming *arguendo* the issue was not procedurally barred, trial counsel Axelrod testified at the PCR hearing that Tom Floyd was originally petitioner's attorney, but recused himself when it became apparent the case would be tried in front of his father. (App. P. 349). Thus, any potential for conflict was removed when attorney Axelrod took over the case.

## VII. CONCLUSION

Based on the foregoing, it is recommended that respondents' motion for summary judgment (document #7) be GRANTED and petitioner's Petition for Writ of Habeas Corpus should be denied, and this Petition dismissed.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge


January 23, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**